# STATE OF MICHIGAN

# COURT OF APPEALS

---

CONTROL ROOM TECHNOLOGIES, L.L.C.,
and LANSING FIBER COMMUNICATIONS,
L.L.C.,

          Plaintiffs/Counter Defendants-
          Appellees,

v

WAYPOINT FIBER NETWORKS, L.L.C.,
WAYPOINT TELECOMMUNICATIONS,
L.L.C., R. CHARLES MCLRAVY, G.
WOODWARD STOVER, and PETER EMPIE,

          Defendants,

and

KEPS TECHNOLOGIES, INC., d/b/a ACD.NET,

          Defendant/Counter Plaintiff-
          Appellant.

UNPUBLISHED
April 28, 2015

No. 320553
Ingham Circuit Court
LC No. 10-000274-CK

---

Before: O'CONNELL, P.J., and FORT HOOD and GADOLA, JJ.

O'CONNELL, P.J. (*dissenting*).

I respectfully dissent. In my opinion, the parties' settlement agreement was sufficiently definite regarding its material terms to constitute an enforceable contract. Accordingly, the arbitration provision of the settlement agreement was enforceable, and the trial court properly dismissed the case for arbitration. I would therefore affirm.

While the majority ably states the facts in this case, I note that this case does not involve a three-page contract: it actually involves a contract in excess of 50 pages. The third paragraph of the handwritten settlement agreement incorporated the parties' June 15, 2006, Extended IRU

-1-

Agreement by reference[1] and provided that "[e]xcept as modified by the definitive agreement to be subsequently entered into[], the Extended IRU Agreement dated 6/15/06 is binding on the parties." Notably, the June 15, 2006 Extended IRU Agreement, like the settlement agreement at issue, includes a dispute resolution process that provides for binding arbitration.

In Michigan, a contract to make a contract is as valid as any other contract. *Opdyke Investment Co v Norris Grain Co*, 413 Mich 354, 359; 320 NW2d 836 (1982). "To be enforceable, a contract to enter into a future contract must specify all its material and essential terms and leave none to be agreed upon as the result of future negotiations." *Heritage Broadcasting Co v Wilson Communications, Inc*, 170 Mich App 812, 819; 428 NW2d 784 (1988). The "material terms which must be established before an agreement becomes enforceable are generally the identification of the parties, the property, and the consideration." *Kojaian v Ernst*, 177 Mich App 727, 731; 442 NW2d 286 (1989). "When other terms, *such as the time for performance or payment*, are missing, courts will presume reasonable terms unless the parties express a contrary intention." *Id*. at 731 (emphasis added). See *Opdyke*, 413 Mich at 368.

My primary dispute with the majority's analysis lies in its determination that the terms left "to be determined" by the parties' settlement agreement constitute material terms. The settlement agreement in this case identifies the parties, the property, and the consideration. Accordingly, it contains all the material terms necessary for an enforceable contract. The only terms left "to be determined" are periods of time. Periods of time are not material terms, and when the parties leave such terms open, courts presume a reasonable time. See *Opdyke*, 413 Mich at 368; *Kojaian*, 177 Mich App at 731. The only questionable term is the further performance terms for splice requests, which the parties left "to be determined." However, because the parties' settlement agreement did not alter these terms, the terms of the Extended IRU Agreement are valid, and the Extended IRU agreement contains provisions regarding splicing under its Article 10, and further provides that all work shall be performed according to ordinary business standards. I conclude that the handwritten settlement agreement did not leave

---

[1] The majority believes that the handwritten settlement agreement does not "successfully" incorporate the Extended IRU Agreement because the settlement agreement itself is not valid. The majority is simply wrong. It is well-established that when a contract incorporates another writing by reference, it becomes part of the contract, and courts must construe the two documents as a whole. *Whittlesey v Herbrand Co*, 217 Mich 625, 627; 187 NW 279 (1922). Where "one writing refers to another, the intention of the parties is to be gathered from the two instruments taken together." *Id*., quoting *Bronson v Green*, Walk 56, 59 (Mich, 1842). "[I]f the reference be such as to show that it is made for the purpose of making such writing a part of the contract, it is to be taken as a part of it just as though its contents had been repeated in the contract." *Whittlesey*, 217 Mich at 628, quoting *Short v Van Dyke*, 50 Minn 286, 289; 52 NW 643 (1892). The majority's unique methodology of contract interpretation is contrary to an extremely long line of Michigan precedent stretching back to chancery proceedings in this state in 1842. This Court does not view contracts that explicitly incorporate other contracts as separate instruments.

open any material terms, and that the settlement agreement contains all the necessary elements of an enforceable contract.

In my opinion, the handwritten settlement agreement provided "cursory" treatment of the parties' complex issues because the Extended IRU Agreement, which the parties made part of the settlement agreement by reference, already covered those complex issues unless specifically modified by the handwritten settlement agreement. In any event, the settlement agreement was a valid contract because it did not omit any material terms. Under both the settlement agreement and the Extended IRU Agreement, this dispute should be submitted to binding arbitration.

I would affirm.

/s/ Peter D. O'Connell